# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 19-919V
UNPUBLISHED

| | |
|---|---|
| ANGELENA WALKER,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: December 7, 2021<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Maximillian J. Muller*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Claudia Barnes Gangi*, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION AWARDING DAMAGES**[1]

On June 24, 2019, Angelena Walker filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on December 28, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU") – and although the parties agreed Petitioner should receive compensation for her injury, they could not resolve the damages to be awarded, so the matter was submitted for an SPU Motions Day hearing.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, and pursuant to my oral ruling on October 29, 2021 (which is fully adopted herein, and sets forth in more detail (via the hearing transcript) the basis for my determination), **I find that Petitioner is entitled to an award of damages in the amount of $125,261.34, representing $122,000.00 for actual pain and suffering, and $3,261.34 for past unreimbursable expenses.**

## I.     Relevant Procedural History

As noted above, this case was initiated on June 24, 2019. On November 16, 2020, Respondent filed a Rule 4(c) Report (ECF No. 18) conceding entitlement, and I issued a ruling finding Petitioner entitled to compensation on November 17, 2020. ECF No. 19. The parties endeavored to settle the matter, but on February 5, 2021, Respondent filed a status report stating that Petitioner rejected a proposed proffer and requesting that I set a briefing schedule for damages. ECF No. 25.

Petitioner filed her brief on March 12, 2021. Petitioner's Brief in Support of Damages ("Pet. Br."), ECF No. 28. Respondent filed his reply on June 4, 2021. Respondent's Brief on Damages ("Res. Br."), ECF No. 29. On August 17, 2021, I proposed that the parties be given the opportunity to argue their positions at an SPU Motions Day hearing, at which time I would decide the disputed pain and suffering issue. ECF No. 30. The parties confirmed that they were amenable to this proposal, but due to scheduling conflicts requested the hearing be set for a later date. ECF No. 31. The hearing was held on October 29, 2021. This written decision memorializes my resolution of the matter.[3]

## II.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health &*

---

[3] At the end of the hearing, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

2

*Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And I may of course rely on my own experience (along with my predecessor

Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579, 489-90 (2013). In *Graves*, Judge Merrow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. Judge Merrow maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. at 590. Instead, Judge Merrow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

### III.     Appropriate Compensation in this SIRVA Case

Ms. Walker's awareness of her injury is not disputed, leaving only its severity and duration to be considered. In determining an appropriate pain and suffering award, I have carefully reviewed the complete record in this case. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating such cases. However, my determination is ultimately based upon the specific circumstances of this case.[5]

Citing three prior damages determinations, Ms. Walker requests an award of $150,000.00 for pain and suffering. Pet. Br. at 6-8.[6] She asserts that the severity of her injury exceeds what the prior petitioners cited in her brief experienced. In particular,

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[5] A more complete recitation of the facts can be found in the Petition, Respondent's Rule 4(c) Report, and the parties' briefing.

[6] The cases cited are *Dobbins v. Sec'y of Health & Hum. Servs.*, No. 16-854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) (awarding $125,000.00 for pain and suffering); *Collado v. Sec'y of Health & Hum. Servs.*, No. 17-225V, 2018 WL 3433352 (Fed. Cl. June 6, 2018) (awarding $120,000.00 for pain and suffering); and *Nute v. Sec'y of Health & Hum. Servs.*, No. 18-0140V, 2019 WL 6125008 (Fed. Cl. Sept. 6, 2019) ( awarding $125,000 for pain and suffering).

Petitioner's case involved surgery, but she experienced a longer and more intense course of treatment, distinguishing *Collado* or *Nute*. *Id.* at 8. Petitioner also emphasizes that her injury was "devastating to her life as a mother…" and necessitated the need for her to quit her goal of becoming an EMT. *Id.*

Respondent, by contrast, submits that an award of $97,500.00 is appropriate for pain and suffering. Res. Br. at 1. Although this case admittedly involved surgery, Petitioner's pain and suffering warrants a lower amount in Respondent's determination because she experienced periods of improvement following physical therapy and steroid injections, and because her condition nearly resolved post-surgery. *Id*. at 6. To support this position, Respondent cites to *Cates v. Sec'y of Health & Hum. Servs.*, No. 18-277V, 220 WL 371072 (Fed. Cl. Spec. Mstr. June 5, 2020), in which the relevant petitioner received $108,00.00 for pain and suffering. During oral argument, however, Respondent's counsel stated that she may have under-valued this case, and allowed that a more appropriate award would be between $97,000.00 and $110,000.00 for Petitioner's past pain and suffering.

The record evidence indicates that Ms. Walker suffered a mild-to-moderate SIRVA injury for approximately 24 months. She sought treatment soon after her vaccination, and her course of treatment was longer than in some other SIRVA cases, consisting of surgery, significant physical therapy (54 sessions), multiple steroid injections, and two MRIs.

However, Petitioner often reported only mild pain (1-3 out of 10). Ex. 3 at 11 (record from November 11, 2017, reporting Petitioner experienced some pain with overhead use of her arm, rating it as 3 out of ten). Further, while she treated for over two years, there were periods of little to no pain following steroid injections and physical therapy. *See, e.g.*, Ex. 9 at 17 (record from June 19, 2017 physical therapy reporting "excellent relief of pain"); Ex. 5 at 24 (record from July 23, 2018, reporting significant improvement following seven physical therapy sessions). Petitioner did ultimately undergo surgery, and her recovery was longer than in other cases (approximately one year). However, the final outcome was very good, with much improved pain, no specific areas of shoulder tenderness, a full range of motion, and complete muscle strength one year after her procedure. Ex. 11 at 19.

There is no formula for determining pain and suffering damages in these types of cases, but certain factors are helpful in determining an ultimate award. The need for surgery and a long duration of treatment usually support a higher-than-median award. However, I also consider gaps in treatment and improvements like Ms. Walker experienced, which support a lower award.

My award for pain and suffering in this case takes into account the cumulative record evidence documenting Petitioner's pain and functional limitations (both pre- and post-surgery), the cortisone injections, MRI findings, the arthroscopic procedure, physical therapy, and overall treatment course and duration.

In addition, I note that the other SIRVA decisions Petitioner cites resulted in awards around $125,000.00 - less than the $150,000.00 sought here. Although it is true the petitioners in those cases underwent shoulder surgeries, as here, their treatment courses reflect that they experienced more significant injuries and reported more severe pain. Petitioner's treatment was longer than in those cases, but that factor alone is not enough to warrant a higher award given the overall facts of this case. Respondent's case is also distinguishable however, as counsel noted during the oral argument.

The facts in this case are instead, in my reasoned determination, most analogous to two cases: *Roberson* and *Randazzo*.[7] As here, the *Roberson* and *Randazzo* petitioners suffered SIRVAs that resulted in surgery, but the severity of the injury and reported pain was more severe.[8] Although in this case Ms. Walker's course of treatment was more protracted, the degree of pain she experienced was not as high (or reported as constantly high), and her delay in seeking surgery indicates that her pain was not as severe. Those differences support a somewhat lower award.

## IV.   Conclusion

For all of the reasons discussed above, and based on consideration of the record as a whole, **I find that $122,000.00 represents a fair and appropriate amount of compensation for Ms. Walker's actual pain and suffering.**[9] **I also find that Petitioner is entitled to $3,261.34 for past unreimbursable expenses,** (as agreed to by the parties).

---

[7] *Roberson v. Sec'y of Health & Hum. Servs.*, No. 19-90V, 2020 WL 5512542 (Fed. Cl. Aug. 7, 2020) (awarding $125,000.00 for pain and suffering); *Randazzo v. Sec'y of Health & Hum. Servs.*, No. 18-1513V, 2021 WL 829572 (Fed. Cl. Feb. 1, 2021) (awarding $125,000.00 for pain and suffering).

[8] *Roberson*, 2020 WL 5512542, at *3-*4 (describing a significantly more severe injury); *Randazzo*, 2021 WL 829572, at *7-*8 (showing that petitioner consistently described her pain as severe (6-8 out of 10) even months after her surgery).

[9] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

Accordingly, **I award a lump sum payment of $125,261.34 in the form of a check payable to Petitioner.** This amount represents compensation for all remaining damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this decision.[10]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[10] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.